

# In the
# Missouri Court of Appeals
## Western District

IN THE INTEREST OF: A.B.,      )
     )
         Appellant,      )
     )
     )     **WD87452**
         v.      )     **OPINION FILED:**
     )     **OCTOBER 7, 2025**
JUVENILE OFFICER,      )
     )
         Respondent.      )

### Appeal from the Circuit Court of Boone County, Missouri
### The Honorable Sue Murvin Crane, Judge

### Before Division Four: Anthony Rex Gabbert, Chief Judge, Presiding,
### Edward R. Ardini, Jr., Judge, Thomas N. Chapman, Judge

A.B. appeals the judgment of the Boone County Circuit Court committing him to the custody of the Division of Youth Services until his eighteenth birthday. The circuit court found that A.B. violated state law by committing the offense of assault in the second degree. In his sole point on appeal, A.B. argues the circuit court plainly erred in finding that A.B. admitted allegations in the petition. He claims his admission was not knowingly, voluntarily, and intelligently made. The judgment is reversed and the case is remanded for further proceedings.

## Facts

In October 2023, the Juvenile Officer filed a petition in the Boone County Circuit Court alleging that A.B. was in need of care and treatment under section 211.031.1(1).

The petition's allegations pertained to A.B.'s mother ("Mother") physically abusing A.B. Nine days later, the Juvenile Officer filed an amended petition. The amended petition added allegations that A.B. violated state laws by committing the offenses of assault in the third degree, assault in the fourth degree, property damage in the second degree, and stealing. The delinquency allegations contained in the amended petition were voluntarily dismissed by the Juvenile Officer prior to adjudication. Evidence was presented on the remaining claims that were filed pursuant to section 211.031.1(1). The court found those allegations were proven to be true and placed A.B. with Mother—in the custody of Children's Division—pending disposition.

The Juvenile Officer filed a second amended petition in February 2024. It added allegations that, *inter alia*, A.B. "left his mother's home because he feared for his safety" and did not wish to return. The second amended petition also included the previously dismissed delinquency allegations. A third amended petition was filed in April 2024. It did not include any new delinquency allegations.

Eleven days later, the Juvenile Officer filed a fourth amended petition. It added the following allegation in paragraph 4f:

> The juvenile, in violation of Section 565.052, RSMo, committed the class D felony of assault in the second degree in that on or about April 25, 2024, in the County of Henry, State of Missouri, the juvenile knowingly caused physical injury to M. T., a staff member at the [R.O.] Residential Facility, by punching M.T. with a closed fist approximately thirty times, pulling out a large amount of M.T.'s hair, and spitting on M.T. The injuries inflicted by the juvenile required M.T. to have stitches to her face. [Missouri Charge Code 565.052-001Y20201399.0] (JR# 8) Safe Schools Notification under RSMo 167.115[.]

2

The matter went to trial in July 2024. When it began, the following occurred:

> COUNSEL FOR JUVENILE OFFICE: Your Honor, as to the fourth amended petition, in paragraph 4, the Juvenile and the Juvenile Office has made an agreement. The Juvenile Office is willing to dismiss allegations A, B, C, D and E.[1] It's our understanding the Juvenile is admitting allegation F.
>
> THE COURT: Okay. And, [Defense Counsel]?
>
> DEFENSE COUNSEL: Your Honor, that was our understanding. The Juvenile Office will dismiss all the allegations with the exception of 4f. We'll make an admission to 4f and ask for a dispositional setting.
>
> THE COURT: Okay.
>
> COUNSEL FOR MOTHER: Your Honor, Mother is opposed to the agreement. She does not feel, with [A.B.] having a disability, she does not feel that's a fair representation and that he understands what he's pleading to and agreeing to. She believes he's entitled to a fair trial and with witnesses. And she also wanted me to let the Court know she is talking to an attorney to hire on his behalf later this afternoon.
>
> THE COURT: Okay. All right, the Court makes note of mother's objection. The Court will accept the announcements from the Juvenile Office and from the Juvenile at this time. And --
>
> COUNSEL FOR MOTHER: Do we need to make sure that it's knowing and voluntary [A.B.]?
>
> THE COURT: We do, and we need to go through that just a little bit. But as far as what the announcements have come, I am -- I am accepting them. Now, [A.B.] -- and I'm assuming -- hasn't signed anything as far as the form that we --

---

[1] These paragraphs alleged that A.B. committed the offenses of (a) the class E felony of assault in the third degree; (b) the class A misdemeanor of assault in the fourth degree; (c) the class A misdemeanor of assault in the fourth degree; (d) the class A misdemeanor of property damage in the second degree; and (e) the class D misdemeanor of stealing

3

DEFENSE COUNSEL: He hasn't signed a waiver, Your Honor, but I did review [A.B.'s] rights with him yesterday and he is aware of those --

THE COURT: Okay.

DEFENSE COUNSEL: -- and that he has a right to a contested hearing.

EXAMINATION OF JUVENILE [A.B.]:
…
Q. [A.B.], have you been able to hear the proceedings so far?

A. Yes.

Q. And at this point in time the Juvenile Office is willing to dismiss paragraphs 4a, b, c, d and e.  Is that something that you and your attorney discussed yesterday?

A. Yes.

Q. And then your attorney announced that you are willing to admit paragraph 4f.  Is that something you discussed as well?

A. Yes.

Q. Okay.  Now, you have been represented by [Defense Counsel] through the process and you have been able to meet with him.  My question is, do you feel that you've had adequate time to talk with him about this morning?

SUPERVISOR AT JUVENILE JUSTICE CENTER:[2] He wants to know what means [*sic*] exactly.

THE COURT: Yeah. Yeah, if you -- if you don't understand a question I ask you, you just ask me again, okay, and I'll rephrase.

BY THE COURT:
Q. So did you have a good opportunity yesterday to discuss everything about this morning?

---

[2] A.B. appeared at the hearing via video conferencing.  The supervisor at the juvenile justice center where A.B. was staying appeared with him on the video call.

A. Yes.

Q. You understand that we could still go through trial on all of those allegations and I would have to make a determination. Do you understand that?

A. Yes.

Q. You understand that you would not be required to testify at all but that your attorney could call witnesses on your behalf? Do you --

A. Yes.

Q. Okay. And you understand that if you are -- if you were found responsible after hearing, you could appeal, take it to a higher court if you wanted to? You understand that?

A. Yes.

Q. Okay. By admitting the one allegation in paragraph 4f, you are waiving your right to having a hearing on the matter. Do you understand that?

A. Yes.

Q. And you have been represented by [Defense Counsel] throughout this and do you have any complaints about [Defense Counsel's] representation?

A. No.

Q. I want to make sure you understood what I asked there. You were talking to [the supervisor at the Juvenile Justice Center] about it. But he's been your attorney and you are happy with going forward with the admission on the one count and the other counts being dismissed; is that right?

A. Yes.

Q. Okay. Has anyone threatened you, making you do this against your will?

A. No.

5

Q. Has anyone promised you something to make you want to do this deal?

A. No.

Q. Did [Defense Counsel] talk with you about the possible different recommendations that will be coming through for disposition? Was that confusing? Was that confusing?

SUPERVISOR AT JUVENILE JUSTICE CENTER: Yeah, he didn't understand what all that means.

BY THE COURT:
Q. Okay. You understand that the Juvenile Office will be making recommendations with regards to the one allegation that you admitted to? Do you understand that?

A. Yes.

Q. And you understand that [Defense Counsel] can make recommendations on your behalf, your mother can make recommendations for her, what she thinks needs to happen, and I will make the final decision on what to do with regards to that one allegation. Do you understand that?

A. Yes.

Q. Okay. Do you have any questions with regards to this particular issue alone, which is admitting that one allegation?

A. No.

THE COURT: Okay. All right. I will find that the admission is knowing and voluntary. Do we want to set a date now or do you want to --

COUNSEL FOR JUVENILE OFFICE: We can.

THE NATURAL MOTHER: And if you're going with the Court's decision once again, I want this appealed. Like I said, [A.B.] is a kid with disability. He hasn't been given ADA accommodations or anything, and this is my child and he's just saying yeah. I bet you can ask some questions now and he don't understand. He don't even know higher courts.

6

THE COURT: Okay. It's noted.

THE NATURAL MOTHER: My son is being told he's coming home, so of course, you know, it's going to be yes, yes, yes.

THE COURT: Mother's statements are noted on the record.

THE NATURAL MOTHER: Thank you.

In its order of adjudication, the court found "based upon the evidence adduced and/or admissions of the parties, that the allegation in 4f has been proven true beyond a reasonable doubt and that Juvenile is in need of care and treatment pursuant to 211.031.1(3) RSMo." In its order of disposition, the court committed A.B. to the Division of Youth Services until his eighteenth birthday.

This appeal follows.

**Standard of Review**

A.B. acknowledges that his point on appeal is not preserved for appellate review; he seeks plain error review. "'Plain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom.'" *A.J.L.G. v. Juv. Officer*, 679 S.W.3d 556, 559 (Mo. App. W.D. 2023) (quoting Rule 84.13(c)). "When a constitutional right is violated, a circuit court's failure to follow a statute will warrant plain error review." *Id*. at 559-60 (internal quotation marks omitted). "Plain error review requires a two-prong analysis to determine: (1) whether there was an error that is evident, obvious, and clear; and (2) whether a manifest injustice or miscarriage of

7

justice occurred as a result of that error." *Id.* at 560 (internal quotation marks omitted). "[T]he injustice must be so egregious as to weaken the very foundation of the process and seriously undermine confidence in the outcome of the case." *Id.* (internal quotation marks omitted).

## Analysis

In his sole point on appeal, A.B. argues the circuit court plainly erred in finding that A.B. admitted allegations in paragraph 4f of the fourth amended petition. He claims his admission was not knowingly, voluntarily, and intelligently made. A.B. states that the record is devoid of any factual basis for the admission and that inquiry into his understanding was insufficient to establish he knowingly, voluntarily, and intelligently waived his rights.

> Although juvenile proceedings are civil, not criminal, proceedings, the need for criminal due process safeguards in juvenile courts, for a proceeding where the issue is whether the child will be found to be delinquent and subjected to the loss of liberty[,] is not obviated, as such proceedings are comparable in seriousness to a felony prosecution.

*A.J.L.G.*, 679 S.W.3d at 560 (internal quotation marks omitted). "While the Fourteenth Amendment does not require juvenile delinquency proceedings to conform to all the requirements of a criminal trial, the Due Process Clause does require adjudicatory hearings to apply the essentials of due process and fair treatment." *Id.* (internal quotation marks omitted).

Missouri Supreme Court Rule 124.06 requires a circuit court in an adjudication hearing to determine whether the allegations in a juvenile officer's petition are true. "In a

delinquency proceeding, before admitting to the facts in a petition ..., juveniles are entitled to the same minimum due process rights afforded adult criminal defendants during guilty pleas." *A.J.L.G.*, 679 S.W.3d at 560 (internal quotation marks omitted).

Missouri Supreme Court Rule 128.02(d) states:

> Upon finding that any allegation in the petition or motion to modify is admitted by the juvenile, the court shall:
>
> (1) make a finding whether the juvenile is present with counsel or, if not, whether the juvenile has knowingly and voluntarily waived the right to counsel;
>
> (2) make findings on the allegations in the petition or motion to modify that are admitted by the juvenile;
>
> *(3) make a finding whether the admissions of the juvenile are freely and voluntarily given and knowingly made and whether a basis in fact exists for the juvenile's admissions; and*
>
> (4) enter an order whether the court accepts the admissions of the juvenile and whether the court has jurisdiction over the juvenile.

(Emphasis added). "Thus, the record and findings must demonstrate that a juvenile's plea in a delinquency proceeding is not only [ ] a voluntary expression of the [juvenile's] choice, it must also be a knowing and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences of the act." *A.J.L.G.*, 679 S.W.3d at 560 (internal quotation marks omitted). "In addition, a court accepting a juvenile's plea in a delinquency proceeding must conclude that there was a factual basis for the violation." *Id*. (internal quotation marks omitted).

9

On appeal, A.B. claims that the criteria of Rule 128.02(d)(3) were not met. Specifically, A.B. states that the court never asked A.B.: whether he understood he was presumed innocent, that the Juvenile Officer had the burden to prove his guilt beyond a reasonable doubt, that he could confront the witnesses against him, that witnesses could be subpoenaed to testify on his behalf, or that he did not have to testify but did have a right to testify on his own behalf. He notes that no party identified that paragraph 4f alleged the crime of assault in the second degree or identified the alleged conduct that resulted in that charge. A.B. emphasizes in his brief that that the circuit court failed to ask A.B. whether he committed the offense alleged in paragraph 4f of the fourth amended petition.

"A plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'" *Booker v. State*, 552 S.W.3d 522, 527 (Mo. banc 2018) (internal quotation marks omitted). "[I]f a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void." *Id*. (internal quotation marks omitted). "Additionally, because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." *Id*. (internal quotation marks omitted).

"Rule 24.02 establishes the Missouri procedure for a guilty plea that assists the plea court in determining whether the plea is voluntary, intelligently, and knowingly made." *Id*. It contains a requirement for a factual basis. *Id*. "A factual basis exists when

10

the conduct the defendant admits establishes the defendant's commission of the offense that is the subject of the plea." *Id*.

"[A] sufficient factual basis is not constitutionally required." *Id*. at 528. "Rather, the factual basis serves as a safeguard to the defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge." *Id*. "Therefore, while a sufficient factual basis can be an important factor in a voluntariness determination, whether a plea is knowing and voluntary is determined from the record as a whole." *Id*.

This court has previously addressed whether juvenile admissions were voluntary, knowing, and intelligent. In both *A.J.L.G.*, 679 S.W.3d 556 and *A.L.H. v. Juv. Officer*, 676 S.W.3d 484 (Mo. App. W.D. 2023), this court reversed and remanded because the circuit court failed to comply with Rule 128.02. The Juvenile Officer argues that *A.J.L.G.* and *A.L.H.* are distinguishable because the courts in those cases made no inquiry at all when accepting the juvenile's admission while, as set forth above, the circuit court in this case made an inquiry into A.B.'s admission.

We agree that the circuit court in this case did question A.B. about his admission in contrast to what occurred in *A.J.L.G.* and *A.L.H.* However, as set forth in the transcript above, A.B.'s admission never identified the crime as assault in the second degree. A.B. was not asked at all about the conduct to which he was admitting. Moreover, A.B. was never asked if he committed the crime and never stated that he did. We also note that A.B. was not an adult and that concerns were raised prior to the court's acceptance of

11

A.B.'s admission that he might not understand what was occurring during the proceedings.

The Juvenile Officer cites the following language from *Booker*, 552 S.W.3d at 528:

> A reviewing court can look outside the "four corners of the transcript of the plea hearing" and consider sources of information that are "still part of the record" such as transcripts from the arraignment or other preliminary proceedings in order to make the determination that a plea was knowingly and voluntarily entered as constitutionally required.

(Internal quotation marks omitted). The Juvenile Officer states that the charges in paragraph 4f were discussed in detail at a previous hearing where A.B. and his attorney were present. The Juvenile Officer cites this passage of transcript where Mother was questioned by counsel for the Juvenile Office:

> Q. And you're aware that [A.B.] is at JJC, not at a mental health hospital, due to the fact that he currently is pending charges for a very serious assault in the second degree --
>
> A. Because --
>
> Q. -- allegedly?
>
> A. Because of the placements that KVC and Children's Division and JO have placed him at. It's been very traumatizing and --
>
> Q. And you're aware that he's alleged to have pulled out hair, spit, and hit with a closed fist approximately 30 times and that's why he's at a detention center and not a mental health hospital?
>
> A. Well, he's not -- he's not guilty until proven and until he's proven guilty. Them are allegations, yes.

12

Q. That's why I used the word "allegedly."

A. Yes. Yes.

Q. Okay. And that there are concerns for community safety and for anyone's safety given the level of assault in the second degree; are you aware of that?

A. Am I aware of what? The charges that they charged him with?

Q. You are aware of the charges, correct?

A. That they charged -- they --

Q. That I charged, yes.

A. I didn't see the charges, I just seen the report, and I've also called down there to see was there charges filed. I was told there was a kind of report put in, or whatever, but as far as charges, they didn't have that on file.

The Juvenile Officer also states that the circuit court took judicial notice of the file which included the probable cause statement for the allegation of assault in the second degree as set forth in paragraph 4f.

We do not find that these remedy the defaults in A.B.'s admission. This was a long and complicated matter. There were four different petitions filed. The transcript reflects multiple proceedings from October 2023 through July 2024 when A.B. made his admission. This case involved delinquency allegations against A.B. but also involved abuse and neglect allegations against Mother. Mother was questioned about A.B.'s assault, as set forth above, when the court took up her motion to have A.B. placed with her. Mother's testimony and the probable cause statement are not an identification by

13

A.B. that he was admitting to assault in the second degree; they are also not an admission by A.B. that he engaged in the conduct comprising the assault in the second degree.

The circuit court in the case was required to conclude that there was a factual basis for A.B.'s admission to assault in the second degree. *A.J.L.G.*, 679 S.W.3d at 560; *A.L.H.*, 676 S.W.3d at 488. While the circuit court found that a basis in fact exists for A.B.'s admission, that finding is not supported by the record. *See A.J.L.G.*, 679 S.W.3d at 560 ("That did not happen here. Though A.J.L.G. confirmed during the adjudication proceeding that he was admitting the summarily referenced allegations in the Juvenile Officer's petition, the specific allegations were not addressed …."); *A.L.H.*, 676 S.W.3d at 488 ("Likewise, there is no evidence on the record of a factual basis for A.L.H.'s admissions."). We find that the circuit court committed evident, obvious, and clear error in accepting A.B.'s admission. *A.L.H.*, 676 S.W.3d at 488 ("The juvenile court committed evident, obvious, and clear error in accepting [A.L.H.'s] admission[s] when it did not make an adequate record or mandatory findings that A.L.H.'s plea was voluntarily and knowingly made and that a factual basis for his admissions existed." (internal quotation marks omitted)); *see also A.J.L.G.*, 679 S.W.3d at 561.

"The protections described in Rule 128.02(d)(3) are not merely technical and are instead intended to safeguard a juvenile's due process rights and right against self-incrimination as a precursor to the loss of liberty that follows a delinquency determination." *A.J.L.G.*, 679 S.W.3d at 561.

14

> Analogous to criminal admissions, it is well established that a guilty plea is a waiver or relinquishment of [constitutional] protections and if the plea is invalid because it is not knowingly and understandingly made ... then it deprives the defendant of safeguards which are rightfully and properly his, no matter whether he is in fact innocent or guilty of the crime charged.

*A.L.H.*, 676 S.W.3d at 488-89 (internal quotation marks omitted). "This deprivation by means of a defective plea is itself manifest injustice, and one so deprived is entitled to have his guilty plea set aside and receive a trial on the merits, which is the appointed and appropriate place to arrive at a determination of guilt or innocence[.]" *Id*. at 489 (internal quotation marks omitted). "The circuit court's failure to comply with Rule 128.02(d)(3) was thus plain error that resulted in a manifest injustice warranting reversal." *A.J.L.G.*, 679 S.W.3d at 561*; see also A.L.H.*, 676 S.W.3d at 489.

The point is granted.

## Conclusion

The judgment is reversed and the matter is remanded for further proceedings consistent with this opinion.[3]

_____
Anthony Rex Gabbert, Chief Judge

All concur.

---

[3] A.B. made his admission while appearing in court via video conferencing. We note that the Due Process Clause of the United State Constitution, Article I, section 19(a) of the Missouri Constitution, and section 546.030, RSMo preserve the right of an accused to be present at critical stages of a trial, including during the entry of a guilty plea. *Micheaux v. State*, 675 S.W.3d 658, 664-65 (Mo. App. W.D. 2023). This right can be waived, however. *Id*. at 665. The record in this case appears to be silent regarding whether A.B. made a voluntary, knowing, and intelligent waiver of his right to be present when he made his admission to the allegations. *See id.* at 668. We need not address this issue, however, given our disposition.

15